IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NANCY L. DUMOND,

               Plaintiff,

        v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

               Defendant.

CV 06-6133-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

    Plaintiff, Nancy DuMond ("DuMond"), brings this action for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security disability insurance benefits ("DIB") under Title II of the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration. He is substituted as the defendant in this action pursuant to FRCP 25(d)(1) and 20 USC § 405(g).

1 - FINDINGS AND RECOMMENDATION

Social Security Act.  This court has jurisdiction under 42 USC § 405(g).  For the reasons set forth below, this court recommends that the Commissioner's final decision be reversed and remanded for the calculation and award of benefits.

## BACKGROUND

DuMond was 51 years old on the date of the hearing.  She completed the tenth grade.  She worked in the past as a small machine operator at a book bindery, a care provider, a cashier, and a certified nurse assistant.

DuMond alleges disability due to lower back pain, pain in her left hip and leg, and depression.  AR 65, 108.[2]  She claims these conditions cause the following symptoms:  inability to stand, sit, bend, reach, walk, or lift and carry more than five to 10 pounds.  AR 65, 108, 290.  DuMond alleges that she cannot work because of her combined physical impairments and stopped working in August 2002 due to major back pain.  AR 65.

DuMond filed an application for DIB benefits on April 4, 2003, alleging disability beginning August 31, 2002.  AR 53-56.  DuMond's application was denied initially and upon reconsideration.  AR 23-29.  On May 18, 2005, a hearing was held before an Administrative Law Judge ("ALJ").  AR 277-306.  In a decision dated August 3, 2005, the ALJ found DuMond not disabled and therefore not entitled to benefits.  AR 11-22.  On April 5, 2006, the Appeals Council denied DuMond's request for review (AR 4-6), making the ALJ's decision the final decision of the Commissioner.

///

---

[2] Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket # 9).

Page 2 - FINDINGS AND RECOMMENDATION

## STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039 (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## MEDICAL RECORDS

The medical records accurately set forth DuMond's medical history as it relates to her claim. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, only a brief summary appears below.

DuMond's history of pain dates began after she suffered a work injury to her back in 1994. AR 17. She reported right leg pain in April 1995 (AR 148) and had a laminotomy/ diskectomy in August 1995. AR 144-45. Her back pain continued post-surgery, and she developed radicular symptoms in 2001. AR 202, 204. Degenerative changes of the lower lumbar spine were found in 2001. AR 212. Since then, she has reported chronic pain in her back, left hip and leg.

DuMond's history of depression dates back to 1999. AR 204. Since then, she has been placed on a number of prescription drugs, including Vicodin, Wellbutrin, Flexeril, Percocet, Endocet, Amitriptyline, Prozac, Elavil, MS Contin, and Methadone. DuMond reported that medication gave her inconsistent relief from her ongoing physical conditions, though effective relief from her depression.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The ALJ determines whether a claimant is engaged in substantial gainful activity. If so, then the claimant is not disabled. If the claimant is not engaged in substantial gainful activity, then the ALJ proceeds to step two. 20 CFR § 404.1520(b).

Step Two. The ALJ determines whether the claimant has one or more severe impairments significantly limiting the claimant from performing basic work activities. If not, then the claimant is not disabled. If the claimant has a severe impairment, then the ALJ proceeds to step three. 20 CFR § 404.1520(c).

Page 4 - FINDINGS AND RECOMMENDATION

Step Three. The ALJ next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 CFR Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, then the ALJ proceeds to step four. 20 CFR § 404.1520(d).

Step Four. The ALJ determines whether the claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past. If so, the claimant is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of the claimant's case proceeds under step five. 20 CFR § 404.1520(e).

Step Five. The ALJ determines whether the claimant is able to do any other work. If not, then the claimant is disabled. If the ALJ finds the claimant is able to do other work, then the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy. The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 CFR Part 404, Subpart P, Appendix 2. If the ALJ demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled. If the ALJ does not meet this burden, then the claimant is disabled. 20 CFR § 404.1520(f)(1).

## THE ALJ'S FINDINGS

At step one, the ALJ found that DuMond had not engaged in substantial gainful activity at any time relevant to this decision. AR 15. At step two, the ALJ found that DuMond had the severe physical impairment of degenerative disc disease of the lumbar spine (*id*), but no severe

mental impairment. AR 16. At step three, the ALJ found that DuMond's impairment is not severe enough to meet or medically equal any of the listed impairments of 20 CFR Subpart P, Appendix 1. AR 17.

Next, the ALJ found that DuMond retained the RFC to perform a modified range of light exertion work activity. AR 19. The ALJ found that she could lift up to 20 pounds, she could stand and/or walk up to 100 yards at five to ten minute intervals, and that she is limited to work which involves no bending. *Id*. At step four, the ALJ found that DuMond could not perform her past relevant work. AR 20. Finally, at step five, the ALJ found that DuMond could perform the jobs of a check cashier (semi-skilled, sedentary), information clerk (semi-skilled, light), and small products assembler (unskilled, light).

## FINDINGS

DuMond contends that the ALJ erred by rejecting the medical opinion of her treating physician and by finding her not fully credible as to her allegations of disabling pain.

### I. Medical Opinion of Treating Physician

Harvey Price, M.D., began treating DuMond in 2001. AR 204. In one paragraph, the ALJ considered and discredited the opinion by Dr. Price that DuMond's chronic back pain prevents her from performing even sedentary work:

> I have also considered and given little weight to the opinion of treating physician Harvey B. Price, M.D., that claimant is incapable of sustaining even sedentary work on a regular full-time basis due to chronic back pain (Exhibits 8F and 14F). Dr. Price has reported no physical findings in support of his opinion and his opinion is inconsistent with the objective evidence of record. He originally opined in October 2002 that claimant was capable of performing a modified range of sedentary work (Exhibit 8F/70). Medical records reveal no change in objective medical findings to support his opinion of decreased physical ability. In addition, the

>statement of Dr. Price is contradicted by the claimant's reported activities. Treatment notes reveal she was performing a significant amount of yard work in July and August 2004 (Exhibit 13F/115 and 120). While Dr. Price reported claimant's pain is aggravated by activities that require movement of her back including reaching, lifting and rotation, the claimant has reported an ability to lift at least 10 pounds (if she does not have to bend); walk short distances; prepare meals; perform housework; shop for groceries; and perform hobbies such as sewing, gardening, and woodwork one to two hours per day (Exhibit 9E). The ability to perform such activities is inconsistent with an inability to perform all work activity.

AR 19-20.

DuMond contends that the ALJ provided insufficient reasons for rejecting Dr. Price's medical opinion and that his opinion should be credited as a matter of law.

In the Ninth Circuit, "where [a] treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995), quoting *Baxter v. Sullivan*, 923 F2d 1391, 1396 (9th Cir 1991). "Clear and convincing reasons" are also required to reject the treating doctor's ultimate conclusions. *Id*, citing *Embrey v. Bowen*, 849 F2d 418, 422 (9th Cir 1988). If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari*, 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2); SSR 96-2p. Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, the court credits that opinion as a matter of law. *Lester*, 81 F3d at 834.

///

///

Page 7 - FINDINGS AND RECOMMENDATION

The ALJ first discredited Dr. Price's opinion because it is not supported by physical findings and is inconsistent with the objective medical evidence. These are not clear and convincing reasons. In his many chart notes of his consultations with DuMond, Dr. Price recorded clinical observations and findings. He performed thorough physical examinations of DuMond during her frequent consultations with him and made clinical findings that supported his diagnosis of lumbosacral degenerative disease with accompanying severe back pain and chronic secondary pain.

As early as September 2001, when DuMond was a new patient, Dr. Price noted that her "[l]umbar paravertebral muscles are tender, and she has tenderness in the area over the left greater trochanteric bursa."[3] AR 201. In September 2003 and at other times, he noted during office examinations that "[s]he is obviously in pain." AR 190; *see also* AR 264 (September 16, 2004: "obvious in pain"); AR 247 (October 24, 2003: "appears quite uncomfortable"). In March 2003, another physician in Dr. Price's practice, Dr. T. Britt Simmons, noted: "She is in pain with slow movements, due to low-back stiffness." AR 191. During that same examination, he noted "tenderness in light palpation in the lumbar spine with reduced range of motion." *Id.* In October 2003, Dr. Price noted "Gait is very stiff and careful. She sits tipped over on the right buttock while sitting in the chair." AR 189; *see also* AR 264 (September 16, 2004: "gait is stiff and awkward"); AR 237 (June 15, 2004), 238 (May 19, 2004), 246 (November 15, 2003), 247 (October 24, 2003) (same). In April 2004, he noted "some tenderness of the lumbar paravertebral muscles and in the left buttock." AR 239. He logically concluded from these ongoing observations and examinations that DuMond's back condition, exacerbated by walking

---

[3] The trochanter is the upper part of the femur, the ball of the hip joint. A bursa is a fluid-filled cavity near a joint.

Page 8 - FINDINGS AND RECOMMENDATION

and sitting, were causing her chronic pain. These conclusions were based on medically acceptable diagnostic techniques, and the ALJ pointed to no contradictory opinions by other physicians. Thus, the lack of physical findings does not provide a basis to reject Dr. Price's opinion.

Objective medical testing also supported Dr. Price's medical opinion. In September 2001, an x-ray showed degenerative changes of the lower lumbar spine.[4] AR 201, 212. In September 2003, an MRI ruled out disk herniation but confirmed continued segmentation anomaly at L3-4 and some degenerative disk slippage of L5 on S1. AR 207. The ALJ erred when he concluded that Dr. Price's opinion was inconsistent with objective evidence of record.

The ALJ also opined that DuMond's medical records reveal no change in objective medical findings to support Dr. Price's change of opinion between October 2002 and November 2003 with regard to DuMond's ability to work on a full-time basis. In October 2002, Dr. Price cleared DuMond to do community service work with restrictions that she should not lift more than 10 pounds, should do no pushing, pulling, twisting, bending, squatting, or climbing, and that the work should be sedentary. AR 194. It is not clear whether this release was to work on a full-time basis. In November 2003 (and again in May 2005), Dr. Price stated that DuMond's chronic severe back pain would prevent her from maintaining employment even at the sedentary level in that she would miss two or more work days per month and that attempting to work 40 hours per week would exacerbate her condition. AR 187, 274.

Between October 2002 and November 2003, Dr. Price engaged in ongoing treatment of DuMond for chronic pain with the use of narcotic medication. Dr. Price noted DuMond's

---

[4] Specifically the x-rays showed loss of disk space at L3-4 with degenerative changes and osteophyte formation.

Page 9 - FINDINGS AND RECOMMENDATION

ongoing pain management issues and attempted different medications to alleviate her pain. *See, e.g.,* AR 188 (October 10, 2003: Methadone discontinued due to vomiting); AR 247 (October 24, 2003: MS Contin prescribed); AR 246 (November 5, 2003: larger dose of Oxycodone prescribed when MS Contin disapproved by insurance company). In October and December 2003, Dr. Price described at length his efforts to treat DuMond's worsening pain. AR 188, 245. In September 2003, Dr. Price noted emergent pain in the left buttock with radicular symptoms. AR 190. In September 2003, Dr. Price noted that her severe back pain was now included "more recent[] radicular symptoms." AR 189. Dr. Price also utilized DuMond's MRI of September 2003 in evaluating her condition. AR 188.

Overall, the record shows that DuMond's physical condition deteriorated between October 2002 and November 2003 such that Dr. Price's change of opinion that DuMond could no longer sustain even sedentary full-time work was supported by objective medical findings. Thus, the lack of change in objective medical findings is not a clear and convincing reason to reject Dr. Price's opinion of decreased physical activity.

Next the ALJ relies on DuMond's physical activities to undermine Dr. Price's finding that she cannot sustain full-time employment. However, the ALJ erred in his evaluation of DuMond's ongoing physical abilities and ignored her testimony and evidence in the record that supports Dr. Price's overall evaluation of DuMond. First, the ALJ describes DuMond as performing "a significant amount of yard work in July and August 2004." AR 20. However, the ALJ fails to mention that DuMond attempted the yard work because on June 15, 2004, Dr. Price recommended increased activity to impede the progress of her degenerative disease. AR 237. As a result of this attempt, DuMond over-worked herself, resulting in increased pain by August

Page 10 - FINDINGS AND RECOMMENDATION

2004. AR 265. DuMond should not be penalized for following her doctor's orders. Further, she testified at her hearing that she has done no yard work since the summer of 2004. AR 293.

The ALJ also relies on DuMond's daily activities including her reported ability to lift 10 pounds without bending, walk short distances, prepare meals, shop for groceries, and perform hobbies for one to two hours per day. AR 20. The ALJ then concluded that "[t]he ability to perform such activities is inconsistent with an inability to perform all work activity." *Id*. First, this conclusion misstates the law. Some limited level of activity is not fatal to DuMond's assertion of disability. *See Vertigan v. Halter*, 260 F3d 1044, 1050 (9th Cir 2001) (claimant does not need to be "utterly incapacitated" to be considered disabled); *see also Reddick v. Chater*, 157 F3d 715, 724 (9th Cir 1998) (sporadic ability to work not inconsistent with disability). Also, DuMond testified that her chronic pain often makes it impossible for her to complete any of these activities in a timely fashion. She explained that doing the dishes may require an hour of effort because she can only stand for five to 10 minutes before she must rest. AR 290. She can only sit for 10 to 20 minutes without pain in her hip from remaining in one position for too long. AR 291, 295. She can only do housework for 20 minutes at a time, such that it may take her two and a half days to complete all housework tasks. AR 118, 293. Finally, DuMond described days when her pain is so severe that she cannot get out of bed, cannot do housework, and needs help getting up to use the restroom. AR 133. Because the evidence in the record of DuMond's reported activities does not undermine Dr. Price's opinion that she is incapable of sustaining full-time work, the ALJ erred in utilizing that evidence to discredit Dr. Price.

In sum the ALJ erred by rejecting Dr. Price's opinion by incorrect legal standards. As a result, his opinion should be credited as true as a matter of law. *Lester*, 81 F3d at 834.

Page 11 - FINDINGS AND RECOMMENDATION

**II. <u>DuMond's Credibility</u>**

DuMond also contends that the ALJ wrongly rejected her testimony as to the extent of her limitations due to chronic pain.

If there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F2d 341, 347-48 (9th Cir 1991) (*en banc*). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Lester*, 81 F3d at 834 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996) (citations omitted). The ALJ cannot discount testimony of excess pain without making specific findings supported by clear and convincing reasons and substantial evidence in the record as a whole. *Johnson v. Shalala*, 60 F3d 1428, 1433 (9th Cir 1995).

DuMond alleges chronic, severe pain in her back, left leg and hip. At step two, the ALJ found DuMond has the severe impairment of degenerative disc disease of the lumbar spine, a legitimate underlying impairment that may cause pain. AR 15. Further, there is no evidence of malingering. Thus, the ALJ must provide clear and convincing reasons for rejecting DuMond's testimony as to pain caused by her severe impairment. He failed to do so.

First, the ALJ noted a lack of objective medical evidence to support DuMond's complaints of pain. AR 18. However, an ALJ may not discredit excess pain testimony because of lack of corroboration by objective medical findings. *See Bunnell*, 947 F2d at 347. Next, after finding that DuMond's back condition "can reasonably be expected to result in some pain," the ALJ selectively cited chart notes showing that various narcotic medications provided DuMond with some respite from her ongoing pain. AR 18. However, the ALJ ignored other chart notes that showed DuMond's pain was not controlled with medication and that she continued to have pain management issues. *See, e.g.*, AR 189 (pain management consultation in October 2003: Percocet not working, trying Methadone instead); AR 188 (pain control consultation in November 2003: Methadone causing vomiting, trying MS Contin instead); AR 245 (chronic pain consultation in December 2003: Oxycodone given for pain control). This selective paraphrasing of the record is disingenuous and does not provide a clear and convincing reason for rejecting DuMond's testimony. *See Reddick*, 157 F3d at 723 (ALJ must fully account for the context of evidence he uses from the record and all parts of the testimony and reports).

In addition, the ALJ relied on DuMond's activities to undermine her complaints of pain, pointing to the fact that she walked on a daily basis despite hip pain in April 2004. AR 18.[5] However, performing limited activities in a home environment is not substantial evidence that DuMond is capable of full-time employment. *See Cooper v. Bowen*, 815 F2d 557, 561 (9th Cir 1987) (explaining that claimants should not be penalized for attempting to lead normal lives in the face of their limitations). None of the activities DuMond performed required exertion in

---

[5] The ALJ failed to recount that though she said she walked daily which caused her hip pain, she also said she had to rest frequently when walking. AR 239.

Page 13 - FINDINGS AND RECOMMENDATION

excess of the limitations which she alleges accompany the severe impairment of lumbosacral degenerative disc disease. DuMond's ability to walk in spite of pain is not sufficient to question her credibility. *See Holohan*, 246 F3d at 1208 (evidence on which ALJ relies to question claimant's credibility must be substantial).

Finally, the ALJ found that DuMond's "more recent complaints of severe pain were often associated with significantly increased physical activity." AR 18. Once again the ALJ attempted to penalize DuMond for increasing her level of physical activity by doing yard work as directed by her doctor. AR 265, 270. The ALJ also fails to mention that the following two months in which increased physical activity may have increased DuMond's pain (July and August 2004), DuMond continued to have chronic, severe pain after returning to her normal level of activity. In September 2004, Dr. Price found her "obvious[ly] in pain" with a gait that was very stiff, careful and slow. AR 264. DuMond's continued severe pain is well-documented beyond the episodes connected to her attempt to increase her physical activity at her doctor's direction.

Because this court finds that not one of the grounds upon which the ALJ questioned DuMond's credibility is supported by the record, the ALJ's credibility finding should be given no weight. As a result, DuMond's testimony as to her symptoms and limitations should be credited as true as a matter of law. *See Lester*, 81 F3d at 834 (ALJ's improper rejection of claimant's testimony must lead to crediting that testimony as a matter of law); *see also Varney v. Secretary of HHS*, 859 F2d 1396, 1401 (9th Cir 1988).

///

///

Page 14 - FINDINGS AND RECOMMENDATION

### III. Combined Effect of Impairments

DuMond also argues that the ALJ should have considered the combined effects of her impairments, including depression. Because her other arguments are dispositive, this court need not address whether the ALJ erred in failing to consider the effect of depression on her complaints of pain.

### IV. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert. denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989) (citation omitted).

Here the ALJ found that DuMond had a severe impairment, but found her not disabled by discrediting her treating physician's opinion and her testimony. If Dr. Price's opinions are credited, then the VE's testimony establishes that DuMond could not perform any competitive employment. AR 304-05. Accepting DuMond's testimony as true with regard to the limitations caused by this impairment, the record shows that she is unable to perform full-time work and should be found disabled. Because the ALJ improperly discredited the opinion of her treating physician and improperly questioned DuMond's credibility, this court finds no use for further development of the record. A remand for further proceedings is unnecessary if the record is fully

developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan*, 246 F3d at 1210.

## RECOMMENDATION

For the foregoing reasons, this court recommends reversing and remanding the Commissioner's decision pursuant to sentence four of 42 USC § 405(g) for the calculation and award of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due June 5, 2007. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

Dated this 18th day of May, 2007.

           /s/  Janice M. Stewart
       Janice M. Stewart
       United States Magistrate Judge